Samuel C. Colemak, J.
This is a suit by an administratrix to recover damages for the death of her former husband, a deck hand on a tugboat. The suit is against the owner of the tug, Bronx Towing Line, Inc., under the Jones Act (U. S. Code, tit. 46, § 688) and against the City of New York under the New York Death Statute (Decedent Estate Law, § 130 et seq.). During the litigation the action against the tug was settled with the approval of the Surrogate. But in view of cross claims between tugboat and city, the nature of the tug’s liability is open.
Bronx Towing, under a contract with the city was engaged in towing scows for the Department of Sanitation, loaded or unloaded, from one point to another in the harbor. At the time of the mishap it had towed two scows abreast of each other from Flushing to a dock at East 91st Street. There were no seowmen on board the scows. The handling of tug and tow and its tying up at 91st Street was entirely in the hands of the tugboat captain and the deckhand, Duffy; there were no others on deck. On the arrival of the tow at 91st Street Duffy tied up the onshore scow to the dock; no city employee was there to do this, although there should have been. Shortly thereafter when Duffy was on the offshore scow the tugboat captain noticed that the tow was drifting. He called this to Duffy’s attention and Duffy tried to reach the inshore tow. He attempted to span the space between the two scows, jumped across, landed on the second scow, slipped on debris on the deck and fell into the water. He was crushed between the two scows and his death followed several hours later.
*1018 The contract between Bronx and the city called upon the city to supply a scowman for each scow to accompany the scow from place to place, assisting in its navigation, in the handling of lines. If there had been a scowman on each of the scows, a scowman would have tied up the tow to the dock. One or the other would have looked to see whether the lines were properly secured; Duffy would not have been called upon to do this work.
Plaintiff makes certain' claims of fault against each of the defendants: against Bronx for failing to provide the plaintiff with a safe place to work; for taking the scows in tow without scowmen so that Duffy would not be required to do the work of the absent scowmen; against the city for permitting the scows to leave without scowmen; for loading garbage in such a way that the deck portions of the scows became wet, slippery and dangerous under foot.
It seems to me that each defendant was grossly culpable. The tugboat company hardly disputes its liability to the plaintiff. Although it asserts that the absence of scowmen was due to the city’s neglect, yet throughout its brief, it recognizes that there was a duty on it to provide Duffy with a safe place to work and that it failed to do so. It asks me to find, among other findings, that “ Bronx’s liability to Duffy stemmed solely from duty to furnish its own employee with a safe place to work.” The liability of the city seems to me to be equally clear. Contract or no contract, the city knowingly permitted two loaded scows to be taken out by the tug without having a scowman on each one; it made no effort to restrain the tug from doing otherwise; indeed it helped make up the tow and helped cast off the lines. The mishap occurred in the dead of night; the weather was bad; it was raining; and both defendants either implicitly or explicitly recognize the increased hazards to a tugboat deckhand in these circumstances without scowmen present. The city attempts to explain their absence by asserting that the tug picked up. two empty scows at 91st Street ahead of scheduled time and proceeded to Flushing without waiting to have scowmen put on them; but there is no basis for this assertion. The responsible city employees knew when the scows were to arrive at College Point and failed to provide scowmen; at best they attempted hurriedly to obtain one scowman, but even he was unavailable, and in any case, the scows simply should not have been permitted to leave. It was the job of the scowmen to handle the lines and to keep the decks clean and the city employees knew that Duffy would *1019 have to do the work of the scowmen, certainly as to the handling of lines and to do it in precarious circumstances. They knowingly put Duffy in a place of danger to do the work that the city’s own employees should have done with greater safety to themselves. Moreover, there was no city employee at the dock when the tow arrived there to tie up the scow.
What of contributory negligence? The burden, of course, is upon the city to establish that Duffy was negligent. That question should not be determined by a judge by abstract reflection, in the seclusion of his chambers, on another’s conduct; it must always be remembered that the test is not what Duffy should have done, but what the normal person, reasonably prudent, if you will, — in the circumstances would have done. Duffy was young and ablebodied; he had served in the U. S. Marines; the tow was drifting; immediate action was necessary and there was no one else to act. In those circumstances would one in Duffy’s position have done what he did? To put it more precisely, has the city established that one in Duffy’s circumstances would not have done what he did? An appraisal of Duffy’s conduct depends almost entirely upon the testimony of the tugboat captain and even to the extent that it is accepted, that testimony is somewhat uncertain in its consequences. After tying up the inshore scow Duffy had returned to the offshore one, apparently without difficulty. The corners of the two scows were together at the time and Duffy was handling the lines to take up the slack. It was at this instant that the captain noticed the tow was drifting and that he called out to Duffy. Tet the captain also said that when Duffy jumped, the scows were “roughly” four feet apart, but that they ‘ were coming together. ’ ’ The city argues in its brief only that Duffy was guilty of contributory negligence as a matter of law: in other words, that if a jury had been present, the question of contributory negligence could not be left to the jury for decision. I do not agree with it (cf. Palermo v. Luckenbach S. S. Co., 355 U. S. 20) and the city has not established that there was contributory negligence in fact. The plaintiff therefore is entitled to recover. She has since remarried but the remarriage is not to be taken into consideration in computing damages. (Cf. report of Judge Veedeb, as Commissioner, in City of Rome, 48 F. 2d 333, collating cases.) Duffy was 24 years old. In addition to his widow, who is about his age, there was an infant son. Duffy was earning about $6,000 a year. I think there should be a judgment in the plaintiff’s favor against the city for $130,000, with interest, the city *1020 to be credited, of course, with the $56,000 already paid by Bronx in settlement. For conscious pain and suffering there will be an additional award of $3,500; and also an allowance for funeral expenses of $1,454.75.
The cross complaints are to be considered. As to the city it makes no claim over for indemnity, either on contractual grounds or on common-law doctrines. It does assert that by the agreement between it and Bronx, Bronx was required to procure insurance for the city’s benefit, insuring it against liability to Duffy, that is, against its own negligence. It is Bronx’s position that whatever obligation to insure it had assumed, it did not undertake to obtain insurance against the city’s own negligence. It relies upon the rule that “ if the indemnitee means to throw the loss upon the indemnitor for a fault in which he himself individually shares, he must express that purpose beyond any peradventure of a doubt.” (Mostyn v. Delaware, Lackawanna & Western R. R. Co., 160 F. 2d 15, 19; cf. Inman v. Binghampton Housing Auth., 3 N Y 2d 137, 148.) And the same rule, it adds, is applicable to agreements to insure which have the scope and consequences of agreements to indemnify. Perhaps the rule should not be so strongly insisted upon when dealing only with an undertaking to procure insurance, but if the basis of the rule is adhered to,— reluctance to throw financial responsibility upon another for a person’s own negligence, — we should require if not language expressing a purpose “ beyond any peradventure of a doubt”, or “in unequivocal terms ”, at least language that, fairly construed, places the obligation upon the putative obligor (cf. Inman v. Binghamton Housing Auth., 3 N Y 2d 137, 147, supra, where the agreement between indemnitor and indemnitee referred to the former as “ insurer ”). I do not find such language in the agreement here.
The clause in question reads: (W) The Contractor shall furnish Protection and Indemnity and Collision and Tower’s liability insurance policies in order to fully indemnify The City against any and all claims by or against The City for damage or injury to its property or personnel or damage to third parties during the operation of this contract as follows:
1. Hull Insurance, Bach Barge.............................. $150,000.00 Total ........................................... $300,000.00
2. Protection and Indemnity Insurance, .Personal Injury, Each Person ....................................... $150,000.00 Each Accident ..................................... $300,000.00 Property Damage, Each Accident........... $150,000.00 All Accidents ...................................... $300,000.00
*1021 If the city were seeking indemnification from Bronx for the city’s own negligence it would get no help from this provision: the language does not “in unequivocal terms” embrace the city’s negligence; it nowhere refers to it. And since it does not refer to the city’s negligence, I do not see how it can be construed as calling upon Bronx to procure insurance against that negligence. The city prepared the contract and by reference to familiar canons, the city quite properly should be asked to point out wherein the clause covers its own negligence. I do not think it can do so. If a construction were called for I should say that Bronx was required to procure such insurance against its own liability as would adequately protect the city financially in such cases where it would be held liable for Bronx’s conduct and where it could compel Bronx to assume such liability. But since there is no agreement of indemnification and as Bronx and the city are tort-feasors there can be no indemnification and the insurance provision does not become operative. (Dick v. Sunbright Steam Laundry Corp., 307 N. Y. 422, 425; Semanchuck v. Fifth Ave. & 37th St. Corp., 290 N. Y. 412.) In Standard Oil Co. of Texas v. Wampler (218 F. 2d 768) where somewhat similar language dealt in one clause with indemnity and insurance, the Court of Appeals for the Fifth Circuit reached a conclusion similar to my own. (See Jackson v. Florida Weather makers, 55 So. 2d 575 [Fla. Supreme Ct.]; Aeronautical Corp. of America v. Gossett, 117 S. W. 2d, 893, 897 [Texas Court of Civil Appeals]; Companía de Navegacion Cristobal v. Lisa R., 116 F. Supp. 560.)
Moreover, when the city shortly after the agreement was entered into asked to see what insurance had been effected, Bronx sent it a “ cover note ” which indicated clearly enough that the insurance was for the account of Bronx, not of the city. “We trust this will be found in order,” it said, and the city took no exception to it. I do not think it should be heard to say now that different insurance should have been procured. (Cf. Standard Oil of Texas v. Wampler, 218 F. 2d 768, supra.) The city’s cross complaint is dismissed.
As to the towing company, it asserts that notwithstanding its own fault, which otherwise would prevent its asking for indemnification, it is entitled to indemnity over against the city because the city violated the provision in the towing contract to supply scowmen with the scows. It relies upon Ryan Co. v. Pan-Atlantic Corp. (350 U. S. 124). But I do not think that the principle of that case calls for a decision in Bronx’s favor. In the Ryan case a shipowner which had been held liable to a longshoreman injured because of improper stowage of cargo, *1022 was given a right of recovery over against the stevedore, the injured longshoreman’s employer, which had been responsible for the stowage and had done it improperly. The court said that the undertaking on the stevedore’s part to stow the cargo •implied a warranty to do it properly and for a breach of the warranty resulting in damage to the shipowner, it was answerable to the shipowner. The injury to the longshoreman occurred because of what the stevedore failed to do under its obligation to the shipowner; the shipowner was responsible to the longshoreman because the stevedore, the shipowner’s alter ego in this instance, did the job improperly; it failed to do what it had impliedly agreed to do to the damage of the shipowner. It had agreed “ to perform all of the shipowner’s stevedoring operations.” (p. 133). Here, so far as Bronx is concerned, it is liable to the plaintiff, not because the city failed to supply scowmen, but because of what it itself did; it is liable because the tug presumed to carry out an act of navigation with an inadequate complement of men. The provision in the contract between the city and Bronx is not the basis for the city’s liability to the plaintiff, nor, more importantly, is it the basis of Bronx’s liability. Bronx is responsible to the plaintiff for what it itself did vis-á-vis its own seaman. We simply cannot say that it is the failure of the city to supply scowmen that imposes liability on Bronx. In the Ryan case the very failure of the stevedore to do what it had undertaken to do imposed liability upon the shipowner, just as the carelessness of an employee of the ship in loading cargo would have imposed liability upon the injured longshoreman. And the shipowner had, in the court’s view, impliedly obtained an agreement of indemnity from the stevedore against the very happening. The stevedore’s agreement “is a contractual undertaking to stow the cargo ‘ with reasonable safety ’ and thus to save the shipowner harmless from petitioner’s [the stevedore] failure to do so ”. (p. 130). There is no such agreement here and the cross complaint of Bronx is dismissed. (Cf. Hagans v. Farrell Lines, 237 F. 2d 477.)